IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                                                                   No. CR 07-290 BB

ALEJANDRO   BELTRAN-FELIX   and
EDGAR TREJO-PEREZ,

        Defendants.

COURT'S FINDINGS OF FACT
AND CONCLUSIONS OF LAW
AND
ORDER DENYING MOTION TO SUPPRESS

THIS MATTER came on for an evidentiary hearing on August 23, 2007, on *Defendants' Joint Motion to Suppress Evidence* [Doc. 36], and having adduced all the evidence, considered the oral arguments, memoranda of law, and proposed findings of fact and conclusions of law submitted by the parties, and being fully advised, the following are the Court's Findings of Fact and Conclusions of Law:

Findings of Fact

1.       On January 23, 2007, Alejandro Beltran-Felix and Edgar Trejo-Perez were driving eastbound in a red Ford Taurus on Interstate-40 outside of Albuquerque, New Mexico. Beltran-Felix was the driver and Trejo-Perez was the passenger.

2.      At approximately 2:17 PM, New Mexico State Motor Transportation Division Officer John Valdez was patrolling I-40 at milepost 140 when he noticed the Ford Taurus drive past.

3.      Following his Police Academy training, Officer Valdez has been a patrolman for the Department of Public Safety for approximately 11 years.  As a patrolman, Officer Valdez enforces the traffic code and issues citations for traffic infractions.  He has been through several classes on narcotics interdiction, which trains law enforcement about narcotics packaging and concealment methods, and interview techniques.

4.      After the Taurus passed him, Officer Valdez pulled out and there were no vehicles in the left lane ahead except the Taurus.

5.      As he approached, the Taurus signaled, then pulled to the right lane in between two large commercial trucks.  The driver, Alejandro Beltran-Felix, testified he pulled in behind a truck to let Officer Valdez pass in the left lane.

6.      Officer Valdez determined the Taurus was following too close to the front truck. Following another vehicle too closely is prohibited by the New Mexico Traffic Code.

7.      After Officer Valdez turned on his emergency lights, Beltran-Felix promptly and safely pulled over to the side of the road near mile marker 140, outside the Albuquerque city limits, at approximately 2:06 PM.

8.      Officer Valdez stopped the vehicle, made a passenger-side approach, and greeted the occupants, Beltran-Felix and his passenger, Edgar Trejo-Perez.  Officer Valdez explained the reason for the traffic stop and requested the driver's license and registration from Beltran-Felix.

9. Officer Valdez immediately noticed an overwhelming odor of air freshener coming from inside the vehicle which he knew from his training was often a masking agent for drugs. He also notice a Boost (pre-paid) cell phone located in the center console. Officer Valdez testified that drug dealers often preferred these phones as they cannot be traced.

10. The passenger, Trejo-Perez, remained extremely still, staring out the front of the vehicle during the entire encounter.

11. Officer Valdez required Beltran-Felix to exit the vehicle to answer some questions.

12. Beltran-Felix asked the officer, "Was I really that close to the semi man?" Officer Valdez responded, "When you pulled between them both, I bet you there wasn't three car lengths between you, between trucks, four maybe." When asked about his distance behind the semi, Beltran-Felix testified at the hearing he was about three car lengths behind the truck, but he did not believe there was a second truck.

13. The car was registered in Colorado. The driver, Beltran-Felix, who had a Georgia driver's license, stated the vehicle belonged to his brother.

14. Officer Valdez verified the Georgia license, asked him his current address, and where he was coming from, to which Beltran-Felix replied Phoenix, Arizona. Beltran-Felix said that he was traveling back to Colorado after driving his brother and mother to Phoenix to see relatives and then they flew to Mexico.

15. Officer Valdez then returned to the Taurus to compare the vehicle identification number on the registration to the vehicle identification number on the automobile.

16. **Officer Valdez informed Beltran-Felix he would be receiving a warning citation, and allowed Beltran-Felix to return to his vehicle.  The officer returned to his patrol unit to issue the warning citation for following too closely.  At that time, Officer Valdez contacted Sergeant Phil Caroland and asked that Caroland remain in the area with his K-9 unit.**

17. **Upon completion of the citation at 2:21 PM, Officer Valdez called for Beltran-Felix to exit the Ford Taurus and return to his patrol unit.  After confirming that Beltran-Felix read English, Beltran-Felix was asked to read the warning ticket and if he felt comfortable, to sign the citation.**

18. **Beltran-Felix testified he thought he had no choice, so he signed the warning.**

19. **Officer Valdez then asked Beltran-Felix if there was anything illegal in the vehicle, and he stated no.  Beltran-Felix was then asked if he was responsible for everything in the vehicle, and he stated yes.  Beltran-Felix then volunteered, "You can check the car if you like."**

20. **Officer Valdez handed Beltran-Felix the citation and specifically requested permission to run a dog around the vehicle.  Beltran-Felix testified he gave permission for a dog sniff as he "didn't see anything wrong with it."**

21. **At 2:23 PM, Officer Valdez returned all documents to Beltran-Felix.  Officer Valdez also provided Beltran-Felix with a written consent to search form.  Officer Valdez explained that the document was a consent to search form.  Officer Valdez asked Beltran-Felix to read the form and sign it if he felt comfortable doing so.**

22. **Based upon Beltran-Felix's testimony, the Court finds that Beltran-Felix can indeed read and understand the English language.**

23. **Throughout the encounter, Officer Valdez remained courteous and professional. His firearm remained holstered and he did not threaten or coerce Beltran-Felix to sign the warning citation or the consent to search form.**

24. **Beltran-Felix testified he signed the consent to search form provided by Officer Valdez "without reading it carefully." He testified he did not read it because he thought "it was just paperwork."**

25. **Sergeant Caroland arrived and deployed his K-9 Rodi at approximately 2:30 PM.**

26. **Rodi immediately alerted to the rear trunk/rear passenger door area of the vehicle. Sergeant Caroland continued to take Rodi around the car. When Rodi continued to alert in the trunk area, Beltran-Felix said, "I think your dog likes my trunk."**

27. **Officers Valdez and Caroland then began to hand search the vehicle, starting in the trunk. Beltran-Felix testified that while he initially thought they would just look under his car seats, he never protested and the consent form specifically allows a search of the vehicle "including luggage, containers and contents of all."**

28. **While searching the dashboard area, Officer Valdez noticed that it had been tampered with. Above the glove compartment were tool marks and silver tape. Sergeant Caroland removed the stereo and observed a hidden compartment that contained two duct taped bundles and a saran wrapped bundle later field tested to be cocaine and methamphetamine.**

29. The officers removed the air bag cover, which revealed a cavity that contained two additional packages, later confirmed to be cocaine.

30. A total of 2.25 kilograms of cocaine and 118.4 grams of methamphetamine were seized from the vehicle. About 25 minutes after the initial stop, Beltran-Felix and Trejo-Perez were arrested at approximately 2:42 PM.

## Conclusions of Law

1. The Court has jurisdiction over the subject matter of, and the parties to, this action.

2. A traffic stop that implicates a seizure of a person, even for a limited amount of time, is a sufficient Fourth Amendment interest in order to challenge the vehicle stop. *United States v. Erwin*, 875 F.2d 268, 270 (10th Cir. 1989). Both defendants have standing to challenge the stop of the vehicle, their detention as well as the search of the vehicle and contents and to move to suppress evidence found in the vehicle as fruit of the illegal stop and detention. *Brendlin v. California*, 127 S. Ct. 2400, 2407 (2007).

3. An ordinary traffic stop is more analogous to an investigative detention than a custodial arrest. *United States v. Botero-Ospina*, 71 F.3d 783 (10th Cir. 1995). Courts therefore analyze such stops under the principles pertaining to investigative detentions set forth in *Terry v. Ohio*, 392 U.S. 1 (1968).

4. Officer Valdez observed the Defendants committing a traffic infraction. Following another vehicle too closely is prohibited by the New Mexico Traffic Code, which states:

> The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard

>    **for the speed of such vehicles and the traffic and the condition of the highway.**

**NMSA 1978, § 66-7-318(A). A violation of Section 66-7-318(A) is punished as a misdemeanor under NMSA 1978 § 66-7-3 (Required Obedience to Traffic Laws.)**

5. **By pulling in three car lengths behind a large truck traveling 70 m.p.h., Beltran-Felix created a legally sufficient basis for Officer Valdez to pull him over for a safety violation. *See United States v. Ladeaux*, 454 F.3d 1107, 1109 (10th Cir. 2006).**

6. **The content of police questions during a lawful detention does not implicate the Fourth Amendment as long as those questions do not prolong the detention. *Muehler v. Mena*, 544 U.S. 93, 101 (2005); *see also United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1258-59 (10th Cir. 2006).**

7. **In this case, the questions posed of Beltran-Felix occurred during the course of the traffic stop. These questions did not prolong the traffic stop in any way, and therefore do not impact the Fourth Amendment.**

8. **In this case, Officer Valdez immediately noted the odor of air freshener as the passenger rolled down his window. The officer knows air freshener to be a common masking agent used by narcotics smugglers. The officer was able to see a Boost cellular telephone in the center console of the vehicle.**

9. **The vehicle's owner was not present, and the driver of the vehicle resided in Georgia. The officer noted that the vehicle, registered in Colorado, was traveling from Phoenix, a potential source city for narcotics activity. *United States v. Williams*, 271 F.3d 1262, 1270 (10th Cir. 2001).**

10. **Although he did not understand the uniqueness of Booster phones, Officer Valdez knew Booster (pre-paid) phones are recognized as "tools of the trade" of drug traffickers.** *See, e.g., United States v. Martinez*, **938 F.2d 1078 (10th Cir. 1991);** *United States v. Hernandez-Dominguez*, **1 Fed. Appx. 827 (10th Cir. 2001).**

11. **In the case of suspected narcotics trafficking, an officer's suspicion will be reasonable if, considering the totality of the circumstances surrounding the stop, "the conduct would appear suspect to one familiar with the practices of narcotics couriers, albeit the pattern of behavior is innocuous to the untrained observer."** *United States v. Bloom*, **975 F.2d 1447, 1456 (10th Cir. 1992);** *United States v. Glover*, **957 F.2d 1004, 1009 (2$^d$ Cir. 1992).**

12. **Based upon the totality of the circumstances, the officer had objectively reasonable suspicion of illegal activity.**

13. **A person who is being detained may give a voluntary consent to search.** *United States v. McRae*, **81 F.3d 1528, 1537 (10th Cir. 1996). In determining voluntariness, the court considers whether the consent was "unequivocal and specific and freely and intelligently given," and whether it was given without duress or coercion.** *United States v. Angulo-Fernandez*, **53 F.3d 1177, 1180 (10th Cir. 1995) (quoting** *United States v. Dewitt*, **946 F.2d 1497, 1500 (10th Cir. 1991)). Failure to object to the continuation of the search under these circumstances may be considered an indication that the search was within the scope of consent.** *United States v. Espinosa*, **782 F.2d 888, 892 (10th Cir. 1986).**

14. **In this case, Beltran-Felix volunteered to allow the officer to search the vehicle prior to the traffic stop's conclusion. Thus, Beltran-Felix gave unequivocal, specific, free, and intelligent consent and was not the subject of duress or coercion when he told Officer Valdez he "could check the car if you like."**

15. **Beltran-Felix later gave voluntary consent to a dog sniff of his vehicle.**

16. **Officer Valdez had returned all of his documents to Beltran-Felix at the time he signed the consent to search form. The only thing keeping him at the scene was the fact Beltran-Felix had previously volunteered to have the vehicle searched.**

17. **Once a dog alerts to the presence of narcotics, law enforcement agents have probable cause to search a vehicle for narcotics.** *United States v. Pinedo-Montoya*, **966 F.2d 591, 594 (10th Cir. 1992).**

18. **The initial traffic stop of Defendants was lawful, as the Taurus was in violation of a state traffic law. All questions posed by Officer Valdez occurred during the course of the traffic stop, and did not extend the duration of the stop. Officer Valdez had reasonable suspicion based on the nervous behavior of the passenger, the Boost phone, the location they were coming from, and the overwhelming odor of a masking agent to ask Beltran-Felix basic questions about his trip.** *United States v. Foreman*, **369 F.3d 776, 785 (4th Cir. 2004). Once Beltran-Felix offered Officer Valdez to "check the car if you like," Officer Valdez obliged and received specific permission for a dog sniff.**

19. **Once K-9 Rodi alerted, Officers Valdez and Caroland had probable cause for the search. The illegal narcotics were lawfully found and seized based on Beltran-Felix's voluntary written consent to search.**

**All tendered findings and conclusions not incorporated herein are deemed Denied.**

**O R D E R**

**Based on the above findings of fact and conclusions of law,** *Defendants' Joint Motion to Suppress Evidence* **is DENIED.**

**DATED this 2$^d$ day of October, 2007.**

                                                                       _____
                                                                       **BRUCE D. BLACK**
                                                                       **United States District Judge**